**Helen HYLER, Appellant,**

v.

**Andrew BOYTOR, Appellee.**

**No. 01–91–00071–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 23, 1992.

Rehearing Denied Feb. 13, 1992.

Gene Hagood, Alvin, for appellant.

W. Scott Golemon, Conroe, for appellee.

Before SAM BASS, DUNN and HUGHES, JJ.

## OPINION

SAM BASS, Justice.

Appellant, Helen Hyler, sued appellee, Andrew Boytor, to recover damages for personal injuries sustained as a result of an automobile accident. A jury found that the negligence of appellee proximately caused the accident. The jury awarded appellant damages for loss of earning capacity in the past, physical impairment in the past, medical expenses in the past, and medical expenses in the future. The jury did not find any compensable damages for pain and suffering or mental anguish in the past or in the future.

We affirm.

Appellant asserts in four separate points of error that the jury's award of no damages for past and future physical pain and mental anguish was manifestly unjust. She claims that the damages were established as a matter of law, and that the verdict is against the great weight and preponderance of the evidence. To assess this complaint, we must look at all the evidence pertaining to the nature and extent of the injury appellant sustained in the accident. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Appellee struck appellant's car from behind on February 19, 1987. Appellant got out of the car without assistance and

walked to the back of the car. She admitted that she had no visible signs of injury; however, she claimed to be dizzy immediately following the accident. After appellant talked with appellee, she drove approximately 15 miles to a friend's house. Appellee testified that he followed appellant for some distance after the accident and that she did not seem to have trouble controlling her car.

Appellant testified that she called her family doctor that day, but she could not get an appointment right away. She reported to work the next day, but she was dizzy, disoriented, and having trouble concentrating. Additionally, she testified that she was having pain in her neck, back, shoulder, and head.

On February 23, 1987, appellant saw her family doctor. His records indicate that appellant's neck snapped in the accident, that she spent the weekend in pain, and that he gave her a prescription for Naprosyn, a pain medication. Dr. Gibson's records further indicate that two months after the accident, he wrote appellant a prescription for Soma Compound, a muscle relaxant with codeine.

Appellant saw Dr. Raymond Couey on March 2, 1987, on the referral of one of his patients. His diagnosis was a severe hyperextension hyperflexion cervical spine injury with joint tearing, damage to the sympathetic nervous system, and a thoracic and lumbar sprain with associated scar tissue formation. Dr. Couey testified that the diagnosis of nervous system disturbance was supported by appellant's complaints of memory loss, visual disturbances, tiredness, and irritability. Dr. Couey admitted, however, that all of these symptoms, in addition to dizziness, disorientation, and drowsiness, are side effects of Soma Compound. Moreover, Dr. Couey's diagnosis of thoracic spinal sprain was based upon X-rays that show a hyper lordotic curve, which means that appellant is slightly slouched. Upon cross-examination, Dr. Couey admitted that such slouching is common in women with extremely large breasts, like appellant. In fact, Dr. Couey recommended that appellant get a

breast reduction. Finally, Dr. Couey admitted on cross-examination that appellant had a congenital defect to her lumbar spine, causing an alteration of the joint angle of 15 percent more than normal.

Dr. Couey referred appellant to Dr. Zalud, an orthopedic surgeon. Dr. Zalud performed a CAT scan, which revealed slight bulging at C3–4 with no herniation. The CAT scan did not show any evidence of a slipped disc, nerve encroachment, canal stenosis, or fracture. He prescribed Fiorinal # 3 with codeine.

Appellant testified that throughout the summer and into the fall of 1987 she had pain in both of her arms and a tingling sensation in her right hand. She had problems with concentration, memory, diarrhea, vomiting, and hair loss.

In early 1989, appellant was referred to Dr. Mohsain Essa at the Texas Pain and Stress Center. Tests performed by Dr. Essa showed that her remote memory seemed intact, that immediate recall and recall of recent remote events were intact, that there was no indication of depression, and that appellant was not pessimistic about the future. He did not have any firm evidence to say that appellant had a nerve injury. He testified that he did not find any indications of severe ligamentous injury, and that without severe injury, scar tissue should not be a problem.

Dr. Rebecca Clearman saw appellant on May 16, 1989. Dr. Clearman did not find neurological problems, and she disagreed with the previous findings of a physical therapist indicating nerve root irritation, cervical radiculopathy with pain and numbness, and with the statement that appellant had been experiencing constant pain that had increased since the accident.

There was other evidence that the jury might have considered in reaching its decision. Appellant admitted that when she went to Dr. Couey about two weeks after the accident, she did not mark any complaints of nausea, vomiting, or diarrhea on his information form. When questioned about her hair loss, appellant admitted that her mother had experienced bald spots. Additionally, July 1988, medical records in-

dicate appellant reported that her family has a history of bald spots with stress.

The jury might also have considered circumstances in appellant's life that could contribute to her injuries. Appellant filled out a Life Change Test while at the Stress Center. She acknowledged change in financial state, trouble with her sister-in-law, revision of personal habits, change in work hours or conditions, change in residence, and change in eating habits. Additionally, she and her fiance had ended their relationship shortly after the accident.

■ The general rule is that the finding of the jury is entitled to great deference by the appellate court unless the record reflects that the jury is motivated by passion, prejudice, or something other than conscientious conviction. *Sibert v. Enriquez,* 774 S.W.2d 812, 814 (Tex.App.–El Paso 1989, writ denied). A jury finding cannot be set aside on appeal merely because this Court would have weighed the evidence differently or reached another conclusion, but only if it is so against the great weight and preponderance of the evidence to be manifestly wrong and unjust. *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex.1988).

Many cases in Texas have concluded that once the fact of injury is acknowledged by the jury by a finding of damages, the jury's failure to award damages for pain and suffering will be regarded as against the great weight and preponderance of the evidence. *Alarcon v. Circe,* 704 S.W.2d 520, 521 (Tex. App.—Corpus Christi 1986, no writ); *Martin v. Warren & Miller Co.,* 639 S.W.2d 706 (Tex.App.—Tyler 1982, no writ). However, there are many other cases that uphold jury findings of no damages for pain and suffering, despite other findings and evidence of injury and damages. *McGuffin v. Terrell,* 732 S.W.2d 425, 427–28 (Tex. App.—Fort Worth 1987, no writ); *Sibert,* 774 S.W.2d at 814.

■ In an attempt to distinguish the two lines of cases, the Dallas Court of Appeals stated:

> These cases perhaps indicate that appellate courts are more reluctant to hold jury findings of no damages for pain and suffering contrary to the great weight and preponderance of the evidence when the indicia of injury and damages are *more subjective than objective.* The more evidence of outward signs of pain, the less findings of damages depend upon the claimant's own feelings and complaints, the more likely appellate courts are to overturn jury findings of no damages for pain and suffering.

*Blizzard v. Nationwide Mut. Fire Ins. Co.,* 756 S.W.2d 801, 805 (Tex.App.–Dallas 1988, no writ) (emphasis added). Thus, the relevant determination in this case is whether the indicia of injury is more subjective than objective. If so, we must affirm the jury's assessment of no damages for pain and suffering.

Many of appellant's claimed injuries are subjective and depend upon her credibility for their proof. Subjective injuries appellant complains of are dizziness, disorientation, concentration problems, pain in neck, arms, back, and shoulders, memory loss, tiredness, irritability, and a tingling sensation in her right hand. Appellant also claims to have experienced vomiting and diarrhea; yet, there is no indication in the record that she ever reported these problems to a doctor.

Doctors' records indicate several objective injuries; however, most of these injuries can be attributed to causes other than the accident. Dr. Couey stated that appellant's thoracic and lumbar sprain and spinal injury could be due to extremely large breasts and a congenital spinal defect. He further testified that his diagnosis of nervous system damage was based upon appellant's subjective complaints of memory loss, tiredness, and irritability. Appellant admitted, and medical records indicate, that she has a family history of hair loss associated with stress. Furthermore, appellant acknowledged that she had undergone a great deal of stress, unrelated to the accident in question. The only objective injury is the bulging at C3–4 that appeared in the CAT scan. The bulging was slight with no herniation, nor was there any evidence of slipped disc, nerve encroachment, canal stenosis, or fracture.

Weighing the many subjective complaints against the one objective injury that might have been caused by this accident, it is apparent that the indicia of injury are more subjective than objective. Thus, the jury finding of no damages should not be overturned. *See Blizzard,* 756 S.W.2d at 805.

This Court has previously overturned a jury's award of zero damages for past physical impairment in *Robinson v. Minick,* 755 S.W.2d 890, 893 (Tex.App.—Houston [1st Dist.] 1988, writ denied). In *Robinson,* appellant complained that the jury's verdict of no damages for past and future physical impairment was against the great weight and preponderance of the evidence. Appellant's objective injuries were multiple skull and facial fractures, initial hospitalization, and surgery. This Court sustained appellant's contention as to the past impairment only. In so holding, we stated that, although some of appellant's claimed injuries were subjective, other "indications of past physical impairment were undisputed, independently proved, and did not rely upon appellant's credibility." *Id.* The jury in *Robinson* had substantial objective evidence upon which to base its decision.

To the contrary, appellant in the case at bar had undisputed, independently proven evidence with regard only to the slight bulging at C3–4. Applying the rule set out in *Blizzard,* we find that the indicia of injury and damages are more subjective than objective. The damages were neither established as a matter of law, nor was the verdict against the great weight and preponderance of the evidence.

Appellant's points of error are overruled.

The judgment of the trial court is affirmed.